**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Nancy Silverwood, | : | Case No. 3:08CV2257 |
| Plaintiff, | : | |
| v. | : | MEMORANDUM DECISION AND ORDER |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' Briefs on the Merits (Docket Nos. 17 and 20). For the reasons that follow, the Magistrate affirms the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

In October 2003, Plaintiff filed applications for DIB and SSI alleging that she had been disabled since February 28, 2003 (Tr. 67-69 and 308-310). Upon denial of the applications both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). On September 7, 2006, ALJ John Pope conducted a hearing during which Plaintiff, represented by counsel, and Vocational Expert (VE) Dr. Joe Havranek appeared and testified (Tr. 318). The Appeals Council's denial of review became the final decision of the agency (Tr. 5-7). Plaintiff then filed a timely action

in this Court seeking judicial review of the Commissioner's unfavorable decision.

## II.  FACTUAL BACKGROUND

**1.     PLAINTIFF'S TESTIMONY**

At the hearing, Plaintiff was 40 years of age and separated from her spouse.  She and her 15 year old son lived with Plaintiff's friend (Tr. 323).  Plaintiff weighed 140 pounds and was 5'3" tall.  She held a valid driver's license and had completed high school (Tr. 323-324).

Plaintiff thought she had last worked in February 2003 as a cashier and shelf stocker.  Going back fifteen years to 1991, Plaintiff held the following jobs:

- certified nurse's assistant,
- server,
- camp ground manager,
- cashier,
- assembly worker and
- meat packer

(Tr. 325-26).

In describing her physical problems, Plaintiff stated she suffered from:

- chronic pain,
- fibromyalgia,
- cervical spine issue after surgery and
- depression

(Tr. 327).

Plaintiff said her physical problems prevented her from lifting, sitting, standing and walking (Tr. 328).

For about the past ten years, Plaintiff had seen Dr. Daniel G. Cadigan, a family doctor, at one to three month intervals (Tr., 329).  Dr. Leo Clark performed surgery on Plaintiff's cervical spine in 2003; however, she failed to experience real relief following surgery (Tr. 329-330).  Dr. Cadigan restricted Plaintiff to lifting no more then ten pounds following her surgery (Tr. 332).

On a typical day, Plaintiff got up about 7:00 a.m. to make sure that her son got off to school timely.  Then she drank coffee, took pills, watched a little t.v., did dishes, took a break, took a shower, did some cleaning and sweeping, laid down again for about an hour and, after arising, finished any household chores.  She began dinner about 5:00 p.m. and then cleaned up after dinner, watched some t.v. in the evening until bed time about 9:30 or 10:00 p.m. (Tr. 333-336).

Plaintiff was able to bathe and groom herself although she experienced some difficulty in reaching overhead.  She shopped for groceries, did laundry (but her son carried the basket for her) and vacuumed (Tr. 336).  Reaching and bending bothered Plaintiff.  She was able to swim about once a month and gardened a little each day (Tr. 337).

Plaintiff also experienced panic attacks along with depression.  Panic attacks occurred about every day, each lasting a couple of hours.  She did attend counseling sessions for about two months; however, she discontinued the sessions because she had no transportation.  Plaintiff maintained frequent contact with a son and daughter who did not live with her.  Although she didn't feel she had any problems getting along with people, she did have problems concentrating.  She estimated that she could walk, stand or sit for two hours of an eight-hour day.  She thought she could stand for only thirty minutes out of an eight-hour day and the same for sitting.  Plaintiff also reported having tremors continuously, affecting the way she was able to use her hands (Tr. 339-345).

2.  **THE VE'S TESTIMONY**

The heaviest item Plaintiff lifted at the meat packer job was about twenty pounds (Tr. 348). From the hypothetical question provided by the ALJ to the VE, the VE stated that the hypothetical plaintiff could perform the past work of the plastic assembler at the unskilled level and that would be the only job.  There were no transferable skills to work that could be performed by Plaintiff (Tr. 349).

## III.  MEDICAL EVIDENCE

Dr. Keith N. Seibert, a chiropractor, examined Plaintiff on September 13, 2001, and February 3, 2002.  He described the pain located in Plaintiff's elbows, wrists and across the shoulders as severe; however, there were no sensory deficit, muscle weakness or reflex abnormalities (Tr. 125).  He conducted a series of manipulative techniques of the cervical dorsal spine in April and May 2000, September, October and November 2001(Tr. 127-128).

Dr. Scott D. Zgrabik, an emergency room physician, diagnosed and treated Plaintiff for lumbosacral strain in February 2003 (Tr. 129).  Plaintiff was evaluated for purposes of physical therapy in April 2003 (Tr. 131-132).

In June 2003, Dr. Vimal S. Kumar, a surgeon, administered an epidural steroid injection (Tr. 139).  The pain only decreased by 25%; consequently, Dr. Kumar administered another injection on August 21 and September 22, 2003 (Tr. 134, 137).

Dr. E. S. Villanueva opined on December 19, 2003, that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday.  Plaintiff could engage in unlimited pushing and /or pulling.  Plaintiff was limited in her ability to engage in fine manipulation or climb using a rope/ladder or scaffold (Tr. 142, 143).  Otherwise, Plaintiff had no manipulative, postural, visual, communicative or environmental limitations (Tr. 143-144).

Dr. John G. Stratton, Ph. D., diagnosed Plaintiff with an adjustment disorder with depression and anxiety, chronic pain from two herniated discs.  He noted that Plaintiff's symptoms were moderate or that she had moderate difficulty in social, occupational, or school functioning (Tr. 157, 158).

Dr. Brendan W. Bauer diagnosed Plaintiff on November 13, 2003, with neck pain with

significant degenerative disk disease with cervical canal stenosis and nonessential tremor (Tr. 162). On February 5, 2004, Dr. Bauer diagnosed Plaintiff with an essential/physiologic-type tremor (Tr. 160).

Effective February 2004, Dr. Deryck D. Richardson, Ph.D., diagnosed Plaintiff with an adjustment disorder with anxiety and an adjustment disorder with a depressed mood (Tr. 166, 168). Plaintiff had moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace and mild difficulties in social functioning (Tr.173). Dr. Richardson also found that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, complete a normal work week, interact appropriately with the general public, get along with co-workers, maintain socially appropriate behavior and respond appropriately to changes in the work setting (Tr. 176, 177).

Dr. Cadigan began treating Plaintiff on April 22, 2002, for neck and shoulder pain with medication designed to treat arthritis (Tr. 217). The magnetic resonance imaging (MRI) of the cervical spine showed mild malalignment of the cervical spine, mild lower cervical spine degenerative disc disease and mild paracentral C5 disc herniation (Tr. 216). At one point during his care, Dr. Cadigan noted the presence of cervical trapezius strain (Tr. 214). Later, he diagnosed Plaintiff with impingement syndrome of the right shoulder (Tr. 213). With the onset of cervical radiculopathy, Dr. Cadigan continued the prescription of Tylenol No. 3 on January 31, 2003 (Tr. 212). In February, Plaintiff developed leg pain. Pain medication was continued (Tr. 211). In April 2003, Plaintiff showed evidence of a bone spur in the cervical spine (Tr. 210). Dr. Cadigan ordered a nerve conduction study. The results were normal (Tr. 268). On April 15, 2003, Dr. Cadigan ordered physical therapy for the arm. The MRI of the right shoulder was considered normal on April 20, 2003 (Tr. 266). In May, Dr. Cadigan prescribed a sleep aid to improve muscular pain. The results from the x-ray on May 30, 2003, of Plaintiff's

gallbladder were normal (Tr. 202). On September 10, 2003, Dr. Cadigan noted that Plaintiff's depression and shoulder pain had improved (Tr. 199). The MRI of Plaintiff's cervical spine administered on October 22, 2003, showed a disc protrusions/extrusion at C5-6 resulting in canal stenosis (Tr. 194). He noted that Plaintiff's symptoms of depression were stable (Tr. 180). In October 2003, the symptoms of depression and anxiety were improved with the prescription of Cymbalta (Tr. 181).

Dr. Cadigan referred Plaintiff to Dr. Clark and in November 2003, Dr. Clark diagnosed a ruptured disk at C5-C6 with cord compression (Tr. 234). He further found Plaintiff's glucose and red blood cell volumes elevated (Tr. 269). In December 2003, Dr. Clark performed cervical fusion surgery (Tr. 147-153). During the following March, Dr. Clark noticed no motions through the fused levels but the cervical spine was quite limited in motion (Tr. 231). In April 2004, Dr. Clark noted some impingement ventrally at C5-6, due to hypertrophic bone formation (Tr. 228, 285). He performed a myleogram on April 6, 2004 (Tr. 227). The myleogram showed no objective evidence to explain Plaintiff's pain (Tr. 226). Dr. Clark discharged Plaintiff from his care in June 2004 (Tr. 224).

Dr. W. Jerry McCloud, an orthopedic physician, opined that Plaintiff could lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour work day, sit about six hours in an eight-hour workday and engage in unlimited pushing and/or pulling (Tr. 219). Plaintiffs' ability to engage in fine manipulation was limited; however, there were no postural, manipulative, visual, communicative or environmental limitations noted (Tr. 220-221).

Plaintiff was evaluated for services provided by the Giving Tree, an agency providing mental health counseling. She was diagnosed with major depressive disorder, post-traumatic stress disorder, alcohol dependence, cannabis abuse, neck pain and moderate symptoms or moderate difficulty in social, occupational, or school functioning (Tr. 239-249).

Dr. Cadigan reiterated his diagnosis of impingement syndrome in the left shoulder on April 20, 2004 (Tr. 281). On June 17, 2004, he recommended that Plaintiff take Tylenol No. 3 four times daily (Tr. 280). In July, he substituted Percocet (Tr. 279). On March 15, 2005, Dr. Cadigan noted that Plaintiff was at maximal improvement. He continued her medication through January 23, 2006 (Tr. 251-257). In May 2006, he continued the sleep aid (Tr. 273).

## IV. STANDARD OF DISABILITY

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); *See also* 20 C.F.R. § 416.920). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); *See also* 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively:

First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.*(*citing Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id.* A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is

7

expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.*

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

## V. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. Claimant met the insured status requirements of the Act through June 30, 2008.

2. Claimant has not engaged in substantial gainful activity since February 28, 2003, the alleged onset date. 20 C.F.R. 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*

3. Claimant has the following severe impairments: essential tremors, chronic pain status post cervical surgery, fibromyalgia, depression, and anxiety. 20 C.F.R. 404.1520(c) and 416.920(c).

4. Claimant does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Claimant has the residual functional capacity (RFC) to perform a restricted range of light work activity. Claimant could lift twenty pounds occasionally and ten pounds frequently. She could sit or stand/walk for six hours each during an eight hour workday. Claimant could never climb ladders, ropes, or scaffolds, and she could frequently finger and reach overhead. Claimant was limited to performing simple, repetitive tasks without strict time or production requirements and involving only occasional contact with co-workers and supervisors and no contact with the general public.

6. Claimant was able to perform her past relevant work as an assembler and plastic assembler. 20 C.F.R. 404.11565 and 416.965.

8

7. Claimant was born on November 29, 1965, and was 37 years of age which is defined as a younger individual aged 18-44 on the alleged disability onset date. 20 C.F.R. 404.1563 and 416.963.

8. Claimant has at least a high school education and is able to communicate in English. 20 C.F.R. 404.1564 and 416.964.

9. Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rule as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.

10. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. 20 C.F.R. 404.1560(c), 404.1566, 416.960(c) and 416.966.

11. Claimant has not been under a disability, as defined in the Act from February 28, 2003, through March 19, 2007. 20 C.F.R. 404.1520(g) and 416.920(g).

(Tr. 12-21).

## VI. STANDARD OF REVIEW

The district court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006). A district court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record. *Id.* (*citing Her v.*

*Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)). If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

## VII. DISCUSSION

Plaintiff contends that (1) the ALJ's RFC does not consider her disabling pain, (2) the ALJ unreasonably rejected Plaintiff's allegations, (3) the ALJ took Dr. Clark's findings out of context, (4) the ALJ unreasonably rejected Dr. Cadigan's opinions and (5) the ALJ did not consider Dr. Stratton's opinion. For these reasons, Plaintiff seeks an order reversing the Commissioner's decision and awarding her benefits.

Defendant contends generally that there is substantial evidence that Plaintiff is not disabled because she can perform her past relevant work. In response to Plaintiff's claims, Defendant argues that Dr. Cadigan's own examination findings do not support his opinion. The ALJ' credibility finding is supported by substantial evidence and should be accorded great weight and deference. There is substantial evidence that Plaintiff can perform light work. The ALJ included the findings of Dr. Stratton in his RFC.

**1.    RESIDUAL FUNCTIONAL CAPACITY.**

Plaintiff contends that the ALJ's RFC finding is erroneous because it fails to incorporate chronic

10

pain.

Residual functional capacity is an administrative assessment of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a) (Thomson Reuters 2009). The RFC finding helps to evaluate the types of work that might be available to a claimant with particular limitations. 20 C.F.R. § 404.1545(a) (Thomson Reuters 2009). The final responsibility for deciding a claimant's RFC rests with the ALJ. 20 C.F.R. § 404.1527(e)(2) (Thomson Reuters 2009). The ALJ determines RFC by considering all relevant medical and non-medical evidence, which includes descriptions and observations (by the claimant and third parties, including physicians) of the claimant's limitations, such as pain, which go beyond symptoms, as well as medical reports and statements as to what a claimant can still do. 20 C.F.R. § 404.1545(a) (Thomson Reuters 2009).

The Magistrate finds that the ALJ did consider Plaintiff's complaints of chronic pain in assessing RFC. However, the ALJ discounted Plaintiff's complaints of chronic pain as they were not supported by evidence from Drs. Cadigan and Clark (Tr. 17-18). Since Plaintiff failed to establish chronic pain based on objective evidence, the ALJ was not required to consider such unsubstantiated complaints in making the administrative assessment of RFC. The Magistrate affirms this finding.

**2.    SUBJECTIVE COMPLAINTS.**

Plaintiff contends that ALJ unreasonably rejected her allegations when he found that she was capable of performing a restricted range of light work activity.

Clearly, subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 475 (6th Cir. 2003) (*See Young v. Secretary of Health & Human Services,* 925 F.2d 146, 150-51 (6th Cir.1990); *Duncan v. Secretary of Health & Human Services,* 801 F.2d 847,

11

852 (6th Cir. 1986)).  An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.  *Id.* at 475-476 (*See Walters v. Commissioner of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 538 (6th Cir. 1981)).  In addition, the ALJ can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate.  *Id*. (*see Townsend v. Secretary of Health & Human Services*, 762 F.2d 40, 44 (6th Cir. 1985); (*See also Blacha v. Secretary of Health & Human Services,* 927 F.2d 228, 231 (6th Cir. 1990)).

Here, the ALJ discounted Plaintiff's subjective complaints to the extent that they were inconsistent with the findings made by Drs. Clark and Cardigan.  In effect, he found that Plaintiff's symptoms were not as severe as she suggested.  He referred to Dr. Clark's use of a conservative approach to treatment; yet, Plaintiff refused additional evaluation.  Further, the ALJ noted that Plaintiff was not quite forthright with Dr. Cardigan about her drug and alcohol use.  Finally, the ALJ referred to her testimony about the wide range of daily activities.  These explanations for partially discrediting Plaintiff's subjective complaints are reasonable and supported by evidence in the record.

**3.    DR. CLARK'S OPINIONS.**

Plaintiff suggests that the ALJ erred in relying on Dr. Clark to find that she was not completely credible.  Dr. Clark was responsible for only one aspect of her care.  The ALJ relied on his findings in determining that Plaintiff's subjective complaints were not completely credible.

The regulations set forth factors that the ALJ should consider in assessing credibility.  *Cross v. Commissioner of Social Security,* 373 F. Supp.2d 724, 732 (N. D. Ohio 2005).  These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and

aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. *Id.* ( *citing* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)). If the ALJ rejects the claimant's complaints as incredible, he or she must clearly state his reasons for doing so. *Id.* (*citing Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994)).  An ALJ's findings as to credibility are entitled to deference because he or she has the opportunity to observe the claimant and assess his or her subjective complaints. *Id.*

Clearly the ALJ could not assess credibility without considering the measures used by Plaintiff's treating physicians. Dr. Clark treated Plaintiff for a cervical condition. The ALJ reasonably relied upon Dr. Clark's opinion in finding that Plaintiff was not completely credible about her cervical condition. The ALJ's conclusion was reasonable based on the evidence.

### 4.  DR. CADIGAN'S OPINIONS.

Plaintiff suggests that the ALJ unreasonably rejected Dr. Cadigan's opinion that due to pain and the narcotic pain medication, she was unable to work and that she had multiple trigger points consistent with fibromyalgia. The ALJ further rejected Dr. Cadigan's opinions as they were inconsistent with the opinions of the state agency physician. The Magistrate finds it unnecessary to address Dr. Cadigan's findings of fibromyalgia. The ALJ acknowledged the diagnosis and adopted it as an impairment (Tr. 18).

The ALJ did find that Dr. Cadigan was a treating source and he accorded significant weight to his opinions. The ALJ did not find that Dr. Cadigan's opinions were entitled to controlling weight since his opinions were not always based on objective medical evidence.

Dr. Cadigan found that Plaintiff's pain was well controlled with a narcotic. What is missing from the record, however, is a determination that the medication made it impossible for Plaintiff to function

13

under any circumstances.  Plaintiff advised that there were side effects from the medication such as dizziness, lightheadedness, tiredness and fatigue (Tr. 332).  However, Plaintiff testified that during a typical day, she got her child off to school, took her medication, drank coffee, watched television and washed dishes.  Of course she took breaks, as needed, and proceeded to completing her household chores.  She started dinner at 5:00 P.M., ate dinner, helped her son complete his homework, cleaned up from dinner and watched television (Tr. 333-335).

The ALJ was reasonably persuaded that Dr. Cadigan found a combination of medications that controlled Plaintiff's pain.  Consistent with Plaintiff's own testimony, the side effects of the medication did not interfere with her performance of day-to-day activities.  This evidence was not considered conducive to a finding that Plaintiff's narcotic analgesia precludes all work.

Petitioner contends that the ALJ rejected Dr. Cadigan's opinion as it was contrary to the state agency physician report.  The state agency physician's report is incomplete as Dr. McCloud did not have the benefit of Dr. Cadigan's diagnosis of fibromyalgia.

In appropriate circumstances, opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources.  SOC. SEC. RUL. 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  One such circumstance may occur when the state agency medical consultant's opinion is based on a review of a complete case record that provides more detailed and comprehensive information than what was available to the individual's treating source.  *Id.*

In this case, the state agency medical consultant's opinion was based on other pertinent evidence about Plaintiff's ability to perform basic work activities such as sitting or standing.  Dr. Cadigan's opinions about Plaintiff's functional abilities were based only on Plaintiff's subjective complaints.  It was

14

reasonable for the ALJ to accord greater weight to the consultant. Further, the state agency medical consultant's 2004 review was confined to the evidence in the case record at the time of review. Dr. Cadigan's diagnosis of fibromyalgia appears in the record in 2006 (Tr. 275).

**5.    DR. STRATTON'S OPINION.**

Plaintiff argues that the ALJ did not consider Dr. Stratton's opinion that due to her depression, anxiety and chronic pain, her ability to maintain attention, concentration, persistence and pace to perform even simple repetitive tasks is moderately impaired.

The opinions of state agency medical and psychological consultants can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the ALJ and Appeals Council levels that was not before the state agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the state agency medical or psychological consultant or other program physician or psychologist. SOCIAL SECURITY RULING 96-6p, 1996 WL 374180, * 2 (July 2, 1996). The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the state agency medical or psychological consultant. *Id.*

The Magistrate finds that the ALJ did consider Dr. Stratton's report. In fact, he adopted Dr. Stratton's report, in part, noting that Plaintiff suffered from depression and had moderate deficiencies in concentration, persistence and pace. He compared all of the state agency psychologists' findings to Plaintiff's testimony, her function report and other medical reports (Tr. 19). The ALJ did consider Dr. Stratton's opinions, identifying that, at best, Plaintiff had **moderate** limitations in her ability to maintain

15

attention, concentration, persistence and pace. The severity of these limitations was not sufficient to show that Plaintiff was incapable of engaging in sustained employment.

## VIII. CONCLUSION

In view of the foregoing, the Magistrate affirms the Commissioner's decision.

So ordered.

/s/ Vernelis K. Armstrong<br>United States Magistrate Judge

Date:   October 29, 2009

16